CRAWLEY, Presiding Judge.
Sunitha Madasu is a dentist practicing in Lauderdale County. Dr. Madasu practices as an associate of another dentist, Dr. Ken Swindle. In March 2001, Dr. Swindle contracted with The Berry Company and Bell-South Advertising and Publishing Company (The Berry Company and BellSouth Advertising are hereinafter referred to collectively as “BAPCO”) to advertise his dental practice in the yellow pages of the telephone directory published by BAPCO. The contract between Dr. Swindle and BAPCO contained the following outbound forum-selection clause: “Any litigation arising hereunder shall be filed in either the Federal District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia, and you agree to consent to the jurisdiction of such courts.”
When BAPCO published its 2002 and 2003 telephone directories, Dr. Madasu was incorrectly listed as a dentist specializing in pediatric dentistry. Another telephone-directory publisher used the information contained in the BAPCO directory to publish its directory; thus, Dr. Madasu was improperly listed as a pediatric dentist in the second publication, ‘Yellow Book USA”, as well. Dr. Madasu was disciplined by the Alabama State Board of Dental Examiners for advertising herself in the Yellow Book as a specialist when she was not qualified as a specialist. Ma-dasu v. State Bd. of Dental Exam’rs., [Ms. 2030034, July 22, 2005] — So.2d - (Ala.Civ.App.2005). We reversed the trial court’s affirmance of the Board’s decision disciplining Dr. Madasu because the Board did not prove that Dr. Madasu had authorized her advertisement as a pediatric specialist. Madasu, — So.2d at-.
Dr. Madasu then sued BAPCO, alleging that it was negligent and/or wanton in its publishing the advertisement listing her as a specialist and alleging that BAPCO had breached its contract with Dr. Swindle, under which contract she claimed third-party-beneficiary status. BAPCO filed a motion to dismiss raising several defenses, including a challenge to the venue of the action based on the outbound forum-selection clause in the contract between it and Dr. Swindle. The trial court originally denied BAPCO’s motion. However, BAPCO moved the trial court to reconsider the motion only on the out *336 bound-forum-selection-clause defense. Dr. Madasu responded, arguing that she was not a party to the contract containing the outbound forum-selection clause and that enforcement of the clause would be unreasonable because to file suit in Georgia would be seriously inconvenient to her for various reasons; Dr. Madasu attached to her response, among other things, her own affidavit, in which she outlined why litigating the action in Georgia would be seriously inconvenient. The trial court granted BAPCO’s motion and dismissed Dr. Mada-su’s action without prejudice pursuant to Rule 12(b)(3), Ala. R. Civ. P., on the ground that venue was improper under the outbound forum-selection clause. Dr. Ma-dasu appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
“[A]n attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit evidentiary matters to support a motion to dismiss that attacks venue. ' Williams v. Skysite Communications Corp., 781 So.2d 241 (Ala.Civ.App.2000), quoting Crowe v. City of Athens, 733 So.2d 447, 449 (Ala.Civ.App.1999).”
Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala.2001). We review a trial court’s ruling on a Rule 12(b)(3) motion regarding the enforcement of an outbound forum-selection clause for an abuse of discretion. Ex parte D.M. White Constr. Co., 806 So.2d at 372.
Dr. Madasu argues that she should not be bound by the outbound forum-selection clause in the contract between BAPCO and Dr. Swindle because she was not a party to the contract. Our supreme court has never specifically decided whether a nonsignatory to a contract containing an outbound forum-selection clause is bound by that clause. However, our supreme court has allowed nonsignatories to a contract to enforce an outbound forum-selection clause. Ex parte Procom Servs., Inc., 884 So.2d 827, 834 (Ala.2003).
In determining that nonsignatories could enforce an outbound forum-selection clause, the court discussed federal cases that held that forum-selection clauses bind nonsignatories that are closely related to the dispute or who participated in the transaction forming the basis of the claim being litigated. Ex parte Procom Servs., 884 So.2d at 834 (citing, among other cases, Hugel v. Corporation of Lloyd’s, 999 F.2d 206, 209-10 (7th Cir.1993), and Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir.1988)). The court, however, did not rest its decision on what it termed persuasive but not binding authority. Ex parte Procom Servs., 884 So.2d at 834. Instead, the court turned to its analysis of the enforceability of arbitration provisions by nonsignatories, resting its decision that nonsignatories may enforce an outbound forum-selection clause on a determination that the claims made by the plaintiff were “intertwined with” and “related to” both the contract and statements made by the defendants while negotiating that contract. Id.
Dr. Madasu also bases her argument on cases involving the enforcement of arbitration provisions by nonsignatories. Dr. Madasu contends that the language of the forum-selection clause prevents its application to her because arbitration provisions that are narrowly worded so as to exclude their application to the nonsignato-ry are not enforceable by that nonsignato-ry. See, e.g., Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 131 (Ala.2002). Dr. Madasu’s argument, however, is prem *337 ised on an exception to an exception to the rule that nonsignatories may not enforce arbitration provisions. -
“A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision. Ex parte Stamey, 776 So.2d 85, 88-89 (Ala.2000). One of the key exceptions to this rule is the theory of equitable estoppel, under which a nonsignatory can enforce an arbitration provision when the claims against the nonsignato-ry are ‘ “ ‘intimately founded in and intertwined with”” the underlying contract obligations. Stamey, 776 So.2d at 89 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), quoting in turn McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)).
“This Court has crafted one exception to that exception: unless the arbitration provision contains sufficiently broad language that indicates that the nonsignato-ry was contemplated as a party, we have repeatedly held that the nonsignatory lacks ‘standing’ to enforce the arbitration agreement. Med Ctr. Cars, Inc. v. Smith, 727 So.2d 9, 19 (Ala.1998); Ex parte Isbell, 708 So.2d 571, 581 (Ala.1997); Ex parte Jones, 686 So.2d 1166, 1168 (Ala.1996); and Ex parte Jones, 628 So.2d 316, 317 (Ala.1993). Where ‘the language of the arbitration provisions limited arbitration to the signing parties,’ this Court has not allowed the claims against the nonsignatories to be arbitrated. Stamey, 776 So.2d at 89.”
Smith v. Mark Dodge, Inc., 934 So.2d 375, 380-81 (Ala.2006).
There is second exception to the general rule that arbitration provisions cannot be enforced by nonsignatories; that exception “arises from a third-party-beneficiary theory that affords the third party all the rights and benefits, as well as the burdens, of th[e] contract, including those associated with arbitration.” Ex parte Stamey, 776 So.2d 85, 89 (Ala.2000); see also Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998) (“Jerry Partin brought his breach-of-contract claim as a third-party beneficiary of the [contract], and, thus, has chosen to accept and enforce all of its terms, including the arbitration clause that he seeks to avoid.”). Thus, Dr. Madasu, who claims to be a third-party beneficiary of the contract between BAPCO and Dr. Swindle, would be bound by any arbitration provision in that, contract irrespective of the language of the provision. In light of our supreme court’s decision in Ex parte Procom Services, in which it analogized cases involving nonsignatory enforcement of arbitration provisions to the enforcement of an outbound forum-selection clause, we conclude, based on Ex parte Stamey and Partin, that Dr. Madasu is likewise bound by the outbound forum-selection clause in the contract between BÁPCO and Dr. Swindle because, as a third-party beneficiary seeking to recover for breach of the contract, she must accept all the terms in the contract, including the outbound forum-selection clause.
Now that we have determined that Dr. Madasu is bound by the outbound forum-selection clause by virtue of her reliance on third-party-beneficiary status, we must turn to Dr. Madasu’s argument against enforcing the clause.
“Alabama has adopted the majority rule that an outbound forum-selection clause should be enforced so long as enforcement is neither unfair nor unreasonable under the circumstances of the case. Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351 (Ala.1997). The party challenging the enforcement of such a clause has the burden of clearly establishing either
*338 “ ‘(1) that enforcement of the forum-selection clause[] would be unfair on the basis that the contract[ ] ... [was] affected by fraud, undue influence, or overweening bargaining power or (2) that enforcement would be unreasonable on the basis that the chosen ... forum would be seriously inconvenient for the trial of the action.’
“Sutherland, 700 So.2d at 352. See also Ex parte CTB, Inc., 782 So.2d [188,] 190-91 [ (Ala.2000) ]; and Ex parte Northern Capital Res. Corp., 751 So.2d 12, 14 (Ala.1999).”
Ex parte Rymer, 860 So.2d 339, 341 (Ala. 2003).
Dr. Madasu does not allege that the contract between BAPCO and Dr. Swindle was “affected by fraud, undue influence, or overweening bargaining power.” Instead, she argues that enforcement of the outbound forum-selection clause in this case would be “unreasonable on the basis that the chosen ... forum would seriously inconvenient for the trial of the action.” She supports her argument by stating that she would be inconvenienced by having to hire an attorney licensed to practice in Georgia and that she would have to require her witnesses to travel to Georgia for trial.
“When an agreement includes a clearly stated forum-selection clause, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.”
Ex parte Northern Capital Res. Corp., 751 So.2d 12, 14 (Ala.1999).
Nothing in our analysis of the factors set out in Ex parte Northern Capital Resource Corp. leads us to a conclusion that the chosen forum is “' “so gravely difficult and inconvenient that [Dr. Madasu] will for all practical purposes be deprived of [her] day in court.” ’ ” Ex parte Northern Capital Res. Corp., 751 So.2d at 15 (quoting Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 353-54 (Ala.1997) (Maddox, J., concurring in the result) (quoting in turn M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972))). The first three factors clearly weigh in favor of enforcing the outbound forum-selection clause. Dr. Madasu, Dr. Swindle, and BAPCO are businesspersons or entities, the contract is a relatively simple one involving advertising in the telephone directory, and the chosen forum is where BAPCO does business and maintains its records of the contract and the materials involved in the execution of the contract, which makes the forum advantageous in that much of the documentation concerning the contract and its execution is located in the chosen forum.
Dr. Madasu’s status as a third-party beneficiary makes the application of the fourth factor slightly different than it would be in a ease involving a party to the contract; however, because she steps into the shoes of Dr. Swindle, we believe the question remains the same: whether the parties to the contract could understand the agreement as written. We conclude *339 that the language of the outbound forum-selection clause is direct and understandable and that Dr. Swindle and BAPCO understood the agreement.
Dr. Madasu has not presented any “extraordinary facts” making the chosen forum seriously inconvenient since the execution of the contract. The only argument that Dr. Madasu makes is that the forum would be inconvenient because she and her witnesses would have to travel to Georgia. “[Distance of travel does not establish that a forum is unreasonable.” Ex parte D.M. White Constr. Co., 806 So.2d at 373.
Dr. Madasu further argues that the dismissal of her negligence and/or wantonness claim should be reversed because the complaint was not filed outside the statute of limitations. Although BAPCO raised the statute of limitations as a defense in its original motion to dismiss, which the trial court denied, BAPCO sought reconsideration of the trial court’s denial of its motion to dismiss only as to the outbound-forum-selection-clause defense. The trial court’s order of dismissal refers only to the outbound forum-selection clause as a basis for the dismissal. Therefore, we will not consider Dr. Madasu’s argument on the statute-of-limitations issue. See Martin v. Martin, 656 So.2d 846, 848 (Ala.Civ.App.1995) (citing Bevill v. Owen, 364 So.2d 1201 (Ala.l979))(“Only rulings of the trial court can be reviewed by an appellate court.”).
Our supreme court has stated that the burden on a party seeking to avoid the enforcement of an outbound forum-selection clause is difficult to meet. Ex parte D.M. White Constr. Co., 806 So.2d at 372; and Ex parte C.T.B., Inc., 782 So.2d 188, 191 (Ala.2000). Dr. Madasu has failed to meet that burden. Accordingly, we affirm the trial court’s dismissal without prejudice of Dr. Madasu’s complaint against BAPCO.
The appellee s motion to strike is denied.
AFFIRMED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.